FILED
9/29/17 7:43 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 13-23143-GLT |
| : | Chapter 11 |
| TAM OF ALLEGHENY LLC d/b/a : | |
| STONEFRONT WITCH WAY INN, : | |
| : | |
| Debtor. : | |
| : | |
| ROSEMARY C. CRAWFORD, TRUSTEE, : | Related to Dkt. No. 111 |
| : | |
| Movant, : | |
| : | |
| v. : | |
| : | |
| 2827 CALIFORNIA INC. and MARY LOU : | |
| FILSINGER, INDIVIDUALLY AND AS : | |
| PRESIDENT OF 2827 CALIFORNIA INC., : | |
| : | |
| Respondents. : | |

## MEMORANDUM OPINION

This matter is before the Court upon the *Trustee's Final Report* (the "Final Report") filed by the chapter 7 trustee.[1] 2827 California Inc. and Mary Lou Filsinger, individually and as president of 2827 California Inc. (together, "California"), filed an objection to the *Final Report*[2] to which the trustee filed her response.[3] The Court conducted a hearing to consider the *Final Report*, the objection, and the response.

---

[1]   Dkt. No. 111.

[2]   Dkt. No. 122. The objection appears to amend a prior document filed at Dkt. No. 120.

[3]   Dkt. No. 123.

**I.**

The Debtor operated a tavern in Pittsburgh's North Side neighborhood on real property owned by its president, Trudy Schmitt.[4] In July 2013, the Debtor initially filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The case was subsequently converted to a chapter 7 proceeding, and August 4, 2014 was set as the last day by which parties could file a proof of claim.[5]

On June 10, 2014, the Court authorized the sale of the Debtor's primary asset, its liquor license, for a purchase price of $66,000.[6] After completing the administration of the chapter 7 estate, the trustee sought approval of her *Final Report* for the purpose of disbursing estate funds among the creditors in accordance with their priority.

California objects to the *Final Report*, asserting that it held a security interest in the liquor license and thereby is entitled to be paid from the sale proceeds generated from the liquidation of its collateral. California claims it provided financing in September 2004 which enabled Ms. Schmitt to acquire the real property and allowed the Debtor to obtain the liquor license.[7] To secure their obligations, California maintains that Ms. Schmitt executed and delivered a mortgage to the real property, while the Debtor granted a security interest in the liquor license and other personal property.

The trustee asks the Court to overrule the objection because California did not file a proof of claim or otherwise participate in the bankruptcy case. She also contends that California does not have a perfected, unavoidable security interest in the proceeds of the liquor license

---

[4]    Dkt. No. 36.

[5]    Dkt. No. 61.

[6]    Dkt. No. 81.

[7]    Dkt. No. 200, ¶ 1–3.

2

because a financing statement was not filed in compliance with the Uniform Commercial Code as adopted under Pennsylvania law ("UCC").[8]

California counters that it could not timely file a proof of claim because it did not receive proper notice of the bankruptcy filing. According to its objection, California did not learn of the Debtor's pending bankruptcy case until July 2015, when it was asked for a payoff in connection with the sale of Ms. Schmitt's real property. Until that occurred, California claims it was unaware of the Court's June 11, 2014 *Order*[9] which authorized the sale of the liquor license free and clear of all liens and encumbrances.

California contends that it was owed $50,640.05 as of August 2015.[10] After receiving $31,038.38 from the sale of the real property, California asserts that the Debtor's remaining obligation has been reduced to $19,601.67.

In August 2015, California sent a letter to the chapter 7 trustee inquiring whether funds remain from the sale of the liquor license. It is undisputed that Trustee Crawford never responded to the letter and that California made no appearance in this case until it filed its initial objection on March 17, 2017.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). Venue is proper in this district under 28 U.S.C. § 1408.

---

[8] The Court has applied Pennsylvania law to this transaction. The mortgage and security agreement California relies upon states that it establishes "a security interest under the Pennsylvania Uniform Commercial Code" and is to be "governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." Ex. A, Dkt. No. 122-1, pp. 3, 11. California also produced a license security agreement which states that it "will be governed and interpreted under the law of the Commonwealth of Pennsylvania." Ex. B, Dkt. No. 120, ¶ 12.

[9] Dkt. No. 81.

[10] Dkt. No. 200, ¶ 6.

## II.

The initial inquiry is whether California holds a secured claim against the proceeds generated from the sale of the liquor license. This Court previously held that a liquor license constitutes personal property upon which a security interest can attach.[11] In Ciprian, Judge Böhm looked to Pennsylvania law to conclude that "a liquor license is properly characterized as a general intangible."[12] Accordingly, the Court will apply Article 9 of the UCC to determine whether California holds a perfected security interest in the liquor license and its proceeds.

Unless a security agreement provides otherwise, a security interest attaches to personal property serving as collateral "when it becomes enforceable against a debtor with respect to the collateral."[13] A security interest becomes enforceable when: (a) value has been given; (b) the debtor has rights in the collateral or the power to transfer those rights; and (c) the debtor has "authenticated" a security agreement that provides a description of the collateral.[14]

California appears to have satisfied these elements. It is undisputed that value was transferred to the Debtor in 2004, and the Debtor had an interest in the liquor license and other personal property identified on the executed security agreement. The Court may therefore conclude that California created a security interest in the liquor license.

The next step is to determine whether California's interest in the liquor license was properly perfected. The purpose of perfection is to "discourage and prevent the creation of secret

---

[11] In re Ciprian, Ltd., 473 B.R. 669, 673 (Bankr. W.D. Pa. 2012) (citing In re GRF, Inc., 119 B.R. 68, 70 (Bankr. W.D. Pa. 1990)).

[12] Ciprian, 473 B.R. at 673; see also In re Kanoff, 408 B.R. 53, 5–59 (Bankr. M.D. Pa. 2009); Tomb v. Lavalle, 444 A.2d 666, 668 (Pa. Super. 1981).

[13] 13 Pa. C.S.A. §9203(a).

[14] 13 Pa.C.S.A. § 9203(b). An authenticated security agreement can be unnecessary in certain instances where the secured party has possession or control of the collateral. See 13 Pa. C.S.A. § 9203(b)(3). Those circumstances are not present here.

4

liens" by putting the world on notice that the collateral has been encumbered.[15]  To perfect a security interest in a general intangible, Article 9 of the UCC requires a secured party to file a financing statement with the Secretary of the Commonwealth of Pennsylvania.[16]

In this case, California filed a UCC financing statement with the Allegheny County Recorder of Deeds on September 22, 2004.  The financing statement was filed as a fixture filing and listed the liquor license, among other things, as collateral.  At the hearing on this matter, California conceded that it did not file the financing statement with the Secretary of the Commonwealth of Pennsylvania.  While the Allegheny County filing may have perfected California's interest in certain fixtures, it was not operative with respect to the liquor license or other personal property.[17]  Due to its failure to properly record the financing statement, California holds an unperfected security interest in the liquor license.[18]

An unperfected security interest is not superior to the rights of a chapter 7 trustee.  Under section 9-317 of the UCC, an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected.[19]  As a chapter 7 trustee is cloaked with the status of a hypothetical judicial lien creditor on the date a bankruptcy

---

[15] In re Aleris Intern., Inc., 456 B.R. 35, 45 (Bankr. D. Del. 2011); see also 79 CORPUS JURIS SECUNDUM SECURED TRANSACTIONS § 47 (James Buchwalter et al. eds. 2017).

[16] 13 Pa. C.S.A. § 9310(a) ("[A] financing statement must be filed to perfect all security interests . . . ."); 13 Pa. C.S.A. § 9501(a) (directing that a financing statement to perfect a security interest must be filed in the office of the Secretary of the Commonwealth unless the collateral is "as-extracted collateral or timber to be cut" or "goods which are or are to become fixtures."); see also Comm. Nat'l Bank, of Pa. v. Seubert & Assocs., Inc., 807 A.2d 297, 307 (Pa. Super. 2002) ("Article 9 requires a secured party to file with the appropriate agency in order to perfect an interest in general intangibles.").

[17] See 13 Pa. C.S.A. § 9501(a) (directing that a filing occur in the "office designated for the filing or recording of a mortgage" only for fixtures and extracted collateral and timber).

[18] Pennsylvania law also provides for the perfection of a security interest through other means, including the exercise of "control" or "possession" over the collateral. See, e.g., 13 Pa. C.S.A. §§ 9313, 9314. As noted in fn. 14, these methods of perfection are not applicable in the present case.

[19] 13 Pa. C.S.A. § 9317.

petition is filed,[20] she is included among the "lien creditors" who enjoy priority over an unperfected security interest.[21] Accordingly, irrespective of whether California received adequate notice of the liquor license sale, the Court finds that it would not be entitled to receive a distribution at closing from the sale proceeds as a secured creditor.

At best, California could be treated as a general unsecured creditor, but its failure to file a proof of claim precludes it from receiving a distribution. To be eligible to participate in a chapter 7 distribution, an unsecured creditor must timely file a proof of claim.[22] Under Bankruptcy Rule 3002, a proof of claim is considered timely in a chapter 7 case if it was filed within 90 days after the first date set for the section 341 meeting of creditors.[23] Late-filed claims, however, are not automatically disallowed.[24] In certain circumstances, an untimely claim may be entitled to distribution as a timely claim if the claimant can demonstrate that it did not have notice or actual knowledge of the bankruptcy prior to the expiration of the bar date, and if a proof of claim is filed in time to permit payment of that claim.[25] If the claimant did have notice of the bankruptcy prior to the passing of the bar date, an untimely claim can nonetheless receive a distribution after all timely filed claims are paid in full.[26]

---

[20] 11 U.S.C. § 544(a)(1).

[21] 13 Pa. C.S.A. § 9102 (stating that a "lien creditor" includes a "trustee in bankruptcy from the date of the filing of the petition"); see also 13 Pa. C.S.A. §§ 9317, 9322.

[22] 11 U.S.C. § 502(b)(9); FED. R. BANKR. P. 3002(a); see In re Feldman, 261 B.R. 568, 575 (Bankr. E.D.N.Y. 2001) ("Generally, a tardily filed proof of claim in a chapter 7 proceeding is not permitted to participate in the distribution to general unsecured creditors.").

[23] FED. R. BANKR. P. 3002(c); In re Cremo, 557 B.R. 343, 346 (Bankr. M.D. Pa. 2016).

[24] Section 502(b)(9) provides that an untimely claim should be disallowed "except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a)." 11 U.S.C. § 502(b)(9).

[25] 11 U.S.C. § 726(a)(2).

[26] 11 U.S.C. § 726(a)(3).

Because no proof of claim was ever submitted, California's allegation that it did not have notice of the bankruptcy until July 2015 is irrelevant. If California had filed a proof of claim upon learning of the case and sought treatment as a timely filed claim, the Court could then consider whether the creditor lacked actual knowledge of the case entitling it to a distribution with other timely filed claims pursuant to section 726(a)(2)(C) of the Bankruptcy Code. Instead, after learning of the case in July 2015, California took no action to protect its interests until it filed its objection to the *Final Report* over one and a half years later. As one Court explained:

> Congress determined through the enactment of § 726(a)(2)(C) and (3) to place a burden on a claimant to find out the claims bar date once it learns of the pendency of the bankruptcy case. . . . Presumably, the burden placed on the creditor by Congress stems from a belief that it is reasonable to expect that an unlisted creditor that learns of the pendency of a bankruptcy case, but that has received no notice or any paper relating to the case, will make inquiry about the case and any deadlines, and will request that it be added as an interested party for purposes of receiving notices.[27]

California argued that it sent a letter to the chapter 7 trustee upon learning of the bankruptcy in an attempt to protect its interests but received no response. Regardless of whether the trustee responded to the letter, California still failed to file a proof of claim or take any other diligent action to alert the Court as to the existence of its claims.[28]

---

[27] In re Rivas, 2012 WL 122410, *3 (Bankr. E.D. Tenn. Jan. 17, 2012); see also In re Bell, 434 B.R. 432, 437 (Bankr. N.D. Ga. 2015) (holding that a creditor holds the burden to protect its interest by filing a proof of claim appropriate for the circumstances in a given case).

[28] The Court is aware that our Court of Appeals allows a document to be considered an "informal proof of claim" under certain circumstances. Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.), 405 F.3d 127, 131 (3d Cir. 2005). The Hefta court required the following for an informal proof of claim:

> Under the five-part test, a document will qualify as an informal proof of claim in bankruptcy only if it is in writing, contains a demand by the creditor on the bankruptcy estate, expresses an intent to hold the debtor liable for the debt, and the document is filed with the bankruptcy court. If a document meets those four requirements, the bankruptcy court must determine whether, given the particular surrounding facts of the case, it would be equitable to treat the document as a proof of claim.

Hefta, 405 F.3d at 131–132.

## III.

Based on the foregoing, the Court finds that California neither holds a perfected security interest against the Debtor nor is it entitled to a distribution from the Debtor's estate as an unsecured creditor.

The objection to the *Final Report* is overruled. A separate Order will issue.

Dated: September 29, 2017

_____
GREGORY L. TADDONIO    cgt
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
J. Michael Baggett, Esq.
2827 California Inc.
Mary Lou Filsinger
Allan J. Opsitnick, Esq.
Rosemary C. Crawford, Esq.
Office of the U.S. Trustee

---

Although the August 12, 2015 letter to the chapter 7 trustee appears to satisfy the first three requirements for an informal proof of claim (a writing, demand by the creditor, and intent to hold debtor liable), it does not meet the fourth requirement of a timely submission to the bankruptcy court. According to the courts of this circuit, including this Court, an informal proof of claim must be filed before the bar date. In re Roper & Twardowsky, LLAC, 2017 Bankr. LEXIS 1864, at *21 (Bankr. D.N.J. July 5, 2017) ("The informal proof of claim doctrine permits a bankruptcy court to treat a late formal proof of claim as timely because it relates back to a document—the informal proof of claim—filed before the bar date.") (citing Grubb v. Pittsburgh Nat'l Bank (In re Grubb), 169 B.R. 341, 347 (Bankr. W.D. Pa. 1994) and In re Tuan, 2013 U.S Dist. Lexis 152425, at * 4 (D.N.J. Oct. 21, 2013)).

Notwithstanding any prior lack of notice, California admittedly became aware of the bankruptcy case in July 2015, yet it failed to diligently act. The letter was not filed with the Court when it was drafted. Instead, it was included within 24 pages of exhibits attached to California's original objection filed on March 17, 2017. A period of more than 550 days elapsed between the time the letter was sent and the day it arrived on the Court's docket. The August 12 letter also suggests that California intended to "promptly file a motion" to pursue the sale proceeds, but no such motion was ever filed. Ex. D, Dkt. No. 122-3, p. 1. California offers no explanation for its delay nor does it offer any other grounds that might justify a late filing of the claim under these circumstances. But cf. Pioneer Inv. Servs. Co. v. Brunswick Assoc's Ltd. P'ship, 507 U.S. 380, 389 (1993) (noting that the excusable neglect standard of Rule 9006(b)(1) does not apply in chapter 7 cases); In re Heyden, 570 B.R. 489, 492 (Bankr. W.D. Pa. 2017).

Even if the letter had met all four requirements for an informal proof of claim, which it does not, the Court would not grant equitable relief for the reasons expressed in this memorandum.